UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANGELA RUIZ, | ) | CASE NO. CV 05-07952 RZ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Angela Ruiz asserts three reasons why the Commissioner's denial of disability benefits, at step four of the familiar five-step analysis, should be affirmed.

## I.

### SUBSTANTIAL GAINFUL ACTIVITY

First, she argues that the Administrative Law Judge "failed to properly determine whether [her] past work was substantial gainful activity (SGA)." Pl.'s Mem. at 9. "Past relevant work" is defined by regulation as "substantial gainful activity," limited to jobs (a) done within the 15 years prior to the alleged onset of disability and (b) enduring long enough for the claimant to have learned how to perform the job. *See* 20 C.F.R. § 416.960(b)(1). "Substantial gainful activity" is defined, somewhat unhelpfully, as "work activity that is both substantial and gainful[.]" 20 C.F.R. § 416.972. Gainful activity

means undertakings done for pay or profit, as opposed, for example, to hobbies, taking care of oneself, doing household chores or socializing. *See* 20 C.F.R. § 416.972(b), (c). Substantial work activity, the same regulation states, "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis . . . ." *See* 20 C.F.R. § 416.972(a).

Much clearer than these rather open-ended definitions are the regulations' "safe harbor" ranges of income. If a claimant's average monthly earnings for jobs done between 1990 and 2000, inclusive, is less than $300, then that claimant is deemed *not* to have engaged in substantial gainful activity and therefore cannot satisfy the test for "past relevant work." But if a claimant's average monthly earnings from jobs done between 1990 and June 1999 is greater than $500, then the claimant is deemed to satisfy the substantial gainful activity test. *See* 20 C.F.R. § 416.974. The Social Security Administration averages earnings only over the period of time during which the work was performed. SSR 83-35.

Here, substantial evidence in the administrative record (AR) supports the Administrative Law Judge's finding (at AR 28, finding 7) that Plaintiff's prior work as a data entry clerk and an administrative clerk constituted "past relevant work," which included an implicit finding that she satisfied the criteria for "substantial gainful activity." Plaintiff herself stated in her Disability Report that she performed work in 1993 in data entry, for three to four months, full time, at $6.25 per hour; and in administrative tasks, for one to two months, also full time, at $9 per hour. AR 97. (Plaintiff does not argue that her tenure in these jobs was too brief to permit her to learn how to perform them. *See* 20 C.F.R. § 416.960(b)(1).) Plaintiff earned $3,815.68 in 1993. AR 92. Thus, even if the Court assumes that Plaintiff worked for six months in 1993, her average monthly earnings during those months was $635.95, well above the $500 safe-harbor line. Accordingly, the SGA finding was not error.

Plaintiff appears to take issue with the fact that the Administrative Law Judge did not "show his math," but any possible procedural error in such an omission plainly was

substantively harmless. Plaintiff also appears to argue that her long periods of unemployment during the relevant 15-year period – for she was much more often *not* working than working during that span – carry some weight, but, under the regulations discussed above, they do not, for the purposes of determining *whether* she had past relevant work.

## II.
## DISCOUNTING OF TREATING DOCTOR'S OPINION

Second, Plaintiff argues that, in concluding that Plaintiff's depression was not severe, *see* AR 24, 27, the Administrative Law Judge improperly rejected the opinion of treating psychologist Dr. Harriet Diamond, "who opined that the claimant's mental impairment gave her marked limitations handling detailed tasks, maintaining attention and concentration in virtually every area of function beyond simple tasks ([AR 255-62])." AR 24; *see* Pl.'s Mem. at 16. An Administrative Law Judge may favor consultative examiners' views over those of treating physicians if he "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (internal quotations omitted). Moreover, an "ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the Administrative Law Judge explained that Dr. Diamond's questionnaire-based opinion was unpersuasive for several independent reasons:

> This questionnaire is inconsistent with the notes of treatment provided by Dr. Diamond, which reflect routine visits by the claimant on a regular basis with no significant episodes of psychotic breaks or attacks and discussions of the claimant's mundane living problems noted ([AR 233-54]). These notes

also reflect a drinking problem of the claimant, which is not discussed by Dr. Diamond in her diagnosis or evaluation ([AR 238, 240, 245, 248 ("brought wine cooler and asked if she could drink it here – no"), 254]). Also I note that Dr. Diamond is a psychologist and yet did not administer any psychological tests to the claimant before making her assessment. Finally, I note that Dr. Diamond's notes reflect that the claimant is seeking her assistance in applying for disability benefits[,] [a fact that] suggests a bias on her part in assisting the claimant to obtain benefits ([AR 241, 242, 248, 250, 251]). Also, although Dr. Diamond has allegedly been treating the claimant for almost four years, beginning in 2000, she has only provided progress notes for approximately eight months (April to December 2003) to support her questionnaire.

The treating records of Dr. Diamond do not show medical findings to support the extreme limitations she has indicated in the questionnaire she submitted. Her notes reflect that the claimant has received essentially conservative treatment, – [*sic*] she has not been psychiatrically hospitalized or placed on a 72 hour observation hold. Her course of psychological treatment is not consistent with such extreme limitations. The extreme limitations assessed fail to take into consideration the possible effect of the claimant's continued alcohol use. Dr. Diamond's notes are generally cursory and brief. . . . It is impossible to discern from those notes how the claimant's functioning might be limited. Dr. Diamond's brief and cursory treatment of the claimant is not consistent with the severe mental disorders and mental incapacity she claims the claimant has.

AR 24-25.  Furthermore, in discounting Dr. Diamond's opinion, the Administrative Law Judge implicitly relied on three other examiners whom he discussed elsewhere in his opinion, namely (1) Paul Balson, M.D., a consultative state-agency psychiatrist; (2) Kenneth Phum, M.D., Plaintiff's treating psychiatrist; and (3) Barry Edelman, M.D., another consultative state-agency psychiatrist.  *See* AR 24.  As the Administrative Law Judge noted, although these other physicians found that Plaintiff did have some mental impairment, they found her far less impaired than did Dr. Diamond.  *Id.*; *see* AR 177-95 (Dr. Balson), AR 205-09 (Dr. Phun); AR 161-67 (Dr. Edelman).

        The foregoing explanation in the underlying opinion enjoys substantial evidentiary support in the record.  The Administrative Law Judge made "findings setting forth specific, legitimate reasons for" rejecting Dr. Diamond's opinion "that are based on substantial evidence in the record," *Connett*, *supra*, 340 F.3d at 874, with the most prominent cited reason being that the psychologist's questionnaire-opinion was "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson*, *supra*, 359 F.3d at 1195.  There is no basis for reversal.

### III.
### PLAINTIFF'S CREDIBILITY

        Third and finally, Plaintiff asserts that the Administrative Law Judge "provides no legitimate reasons for" finding her testimony about her mental impairments to be less than fully credible.  Pl.'s Mem. at 21.  Generally, once a claimant has supplied objective medical evidence of a malady that "could reasonably be expected to produce" some degree of pain or other subjectively-reported symptoms, the Administrative Law Judge may discount the claimant's testimony about the degree of pain, and how that pain affects the claimant's ability to work, only if the judge supplies specific, cogent reasons supported by substantial evidence in the record, *see Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (*en banc*); *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996), sufficient to permit

this Court to conclude that the Administrative Judge's disbelief was not arbitrary. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994).

        The Administrative Law Judge complied with the *Bunnell* standard by stating multiple reasons, supported by substantial evidence, for finding Plaintiff's account of her subjective symptoms not fully credible. First, he pointed out that the record contradicts, rather than supports, her subjective claims of disablingly poor memory and concentration. "[W]hen seen by Dr. Edelman in October 2002, she was able to provide a significant amount of spontaneous history. He found her memory and concentration intact. The claimant admitted that she handles her own money and pays the bills ([AR 162, 164]) . . . . Similarly, when [Plaintiff was] seen by [treating psychiatrist] Dr. Phum in October 2002, he found the claimant's memory intact with fair concentration and attention ([AR 209]). . . . In December 2003, the claimant failed to report any concentration or memory problems and [physical-therapy physician] Dr. [Jaumaan] Lee reported none ([AR 264-79])." AR 26.

        Second, the Administrative Law Judge noted that Plaintiff gave tellingly different accounts of her lifestyle and routine activities to doctors from those she gave in support of her disability claim. She reported "being housebound and doing little beyond watching television" to support her claim, but "Dr. Edelman reported that the claimant presented an active driver's license as proof of identification, [with] the claimant adding that she shops and drives." AR 26, *citing* AR 162; *see also* AR 167 (copy of Plaintiff's driver's license appearing at end of Dr. Edelman's report). "When seen by Dr. Diamond in April 2003, the claimant admitted working ([AR 254]). She noted in July 2003 an interest in taking classes in dance or cooking ([AR 246]) and in September 2003 going to a singles picnic sponsored by her church ([AR 244]). She is an active church member, going two times a week ([AR 235]). These are not the activities of a totally disabled individual."

        That there may be other interpretations of a claimant's testimony and behavior that are reasonable, as Plaintiff argues, does not mean that the Administrative Law Judge

erred.  As long as his interpretation is reasonable and supported by substantial evidence, it is not the role of the Court to second-guess it.  *Rollins v. Massanari*, 261 F. 3d 853, 857 (9th Cir. 2001).  The underlying opinion satisfied the requirements for discounting Plaintiff's credibility.

## IV.
## CONCLUSION

For the foregoing reasons, the underlying decision is affirmed.

DATED:   February 2, 2007

                                            RALPH ZAREFSKY  
                                            UNITED STATES MAGISTRATE JUDGE